This bill is filed by complainant to compel her brother and sister to permit her to share, with them, property they received under the will of their father.
Complainant insists that she intended to file a caveat
against the probate of her father's will, but refrained from so doing because her brother and sister agreed to assign to her one-third of their shares in the estate. They deny any such agreement. Complainant's counsel, in his brief, says: "The only question in this case is whether the testimony presented on behalf of complainant is to be believed."
The father, William E. Gilmore, died in East Orange on January 17th, 1928. He had been a prominent business man and left approximately $900,000. By his first marriage he had three children, Mrs. Darling, the complainant; Edgar S. Gilmore and Madeline Gilmore Kelly, the defendants. The first wife died in 1922, leaving two pieces of real estate, one in East Orange and one on Long Island. In order to facilitate the sale of these properties the children conveyed the title to their father. He claimed no right in them save that of curtesy. He held these properties at the time of his second marriage in 1925. Mrs. Darling was much opposed to the second marriage. She instituted suit in New Jersey to have the East Orange conveyance set aside on the ground of fraud. The suit was never heard. It was terminated by the sale of the property and the division of the proceeds. The Long Island property was also sold and the proceeds divided. On October 29th, 1926, Mr. Gilmore made his last will. On May 16th, 1927, he executed a codicil. Prior to his death, he took out two life insurance policies for $20,000 each. In one, his daughter Madeline was named beneficiary; in the other, his son Edgar. From the time of the controversy over the first wife's property until his death, Mr. Gilmore and his daughter Mrs. Darling were estranged. By the terms *Page 567 
of his will Mr. Gilmore gave his homestead in Montclair to his widow. He left $5,000 to Mrs. Darling. The residue was to be divided into three equal shares. The income on the first share was to be paid to his widow until her death or remarriage, when it should be divided equally between his son Edgar and his daughter Madeline. The income on the second share was to be paid to his son Edgar for life, and on his death, to his issue, or failing issue, to the issue of Madeline. The income on the third share was to be paid to Madeline and on her death to her issue, or failing issue, to the issue of Edgar. At the time of Mr. Gilmore's death none of his children knew the contents of his will. After the will had been read in the presence of the widow and Edgar, the son, Edgar started for his sister Madeline's house to inform her of its contents. On his way he met Mrs. Darling and told her its provisions.
Complainant's claim, in substance, is that she intended to file a caveat against the will but did not do so because her brother and sister agreed to divide their shares with her if she would not do so. When asked about the reasons for filing such acaveat, she said she thought her brother and sister had alienated her father from her in their refusal "always in any way to try to fix up anything between us," explaining that she said her sister kept her away from her father. Further on in her testimony she says she went to see her father, was never refused admittance, and her sister did not keep her away from her father. She also says that her brother, in her opinion, did not influence her father. She also alleges that her father was a heavy drinker and "when he was in those spells" was not a clear thinker. She does not assert that he was mentally incapacitated at all times to make a will. Mrs. Darling asserts that her brother and sister agreed to surrender to her a large part of their inheritance because they wanted to avoid a legal attack on the will, fearing if it were set aside the widow would get more than the will provided for her. The improbability of this is apparent from the terms of the will. Had it been set aside, Edgar and Madeline would have received their shares in the *Page 568 
personalty outright instead of only the income, and their share in the homestead real estate instead of nothing. There could have been no fear on their part, therefore, about a contest, for were it successful, they would benefit. It should be noted also that the will cut off any unsuccessful contestants, so that complainant might, had she failed to break it, have lost even the $5,000 bequest. Her brother, Edgar, lived with her after the will was read for sometime.
Mrs. Darling says that on the Monday after the will was read, the agreement for division was made. She is corroborated in this only by her husband. She also says that she repeatedly asked her brother, she does not say she ever asked her sister, to reduce the agreement to writing. This was never done. Edgar says he definitely refused to sign any paper on January 24th. There was still time, therefore, in which to bring proceedings to contest the will. It is admitted that Edgar and Madeline each gave a portion of the insurance money to their sister. This insurance, as I have stated above, was no part of the estate, and I do not think the transaction is any corroboration of the alleged agreement. Edgar and Madeline both say they gave the money as a gift, feeling sorry for their sister's small share in the estate, but that there was no consideration for it. This I believe. The brother and sister also admit that they told Mrs. Darling they would give her something from the estate. No specific amount was mentioned and no written agreement was ever executed. Edgar says he refused to do so. Madeline was never asked to do so. Both deny emphatically that they ever made any agreement for any specific amount conditioned on Mrs. Darling's refraining from legal proceedings. Their testimony is clear and straightforward and seems to me to be entirely truthful. I think they were surprised at the disposition their father had made of his property, were sorry for their sister, and were willing to help her in a manner they themselves might determine on. They were not, however, willing to be forced into a legal agreement which would deprive them of a large part of their inheritance. On the other hand, Mrs. Darling's attitude on the stand convinces me that she is a *Page 569 
highly excitable woman, and her testimony was contradictory and not convincing. The evidence shows that she had quarreled with her father and had started suit against him alleging fraud. This she discontinued when an equal division was made of her mother's property. It is quite apparent that she was surprised and annoyed at having been left out of her father's will with so small a recognition. She, therefore, I think, magnified the generous suggestions of her brother and sister into a legal agreement, which would put her upon a par with them.
A claim of this kind, involving a large amount of money, should have conclusive proof to substantiate it. The uncorroborateed statements of complainant and her husband are not, in my opinion, sufficient in the absence of any written agreement, to establish the claim she is now making. As counsel for complainant has said that the conclusion depends entirely on the facts and the reliability of complainant's story, I shall find that she has exaggerated her facts. She endeavored to force her brother and sister into an agreement they never contemplated. They desired to assist her, but not to the extent she now insists upon. I see no necessity of citing cases in this matter. It is purely a matter of fact. I find that no agreement, such as is alleged by complainant, was ever entered into. To allow such a claim, upon the mere statement of those making it, would seriously affect property rights and result in prolonged litigation.
I will advise a decree dismissing the bill.